

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00078-CR

PHILLIP RAMIREZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Phillip Ramirez of unlawful possession of a firearm by a felon and assessed his punishment at twelve years' confinement and a $4,000 fine. The trial court sentenced him accordingly. In his sole issue, Appellant challenges the sufficiency of the evidence to support his conviction. Because we hold that the evidence is sufficient, we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

Section 46.04 of the penal code provides that

(a) A person who has been convicted of a felony commits an offense if he possesses a firearm:

(1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

(2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.[2]

Appellant stipulated to the prior felony conviction and does not challenge that element of the State's proof. He challenges only the sufficiency of the evidence to show that he possessed a firearm.

After the parties briefed this case on appeal, the Texas Court of Criminal Appeals held "that there is no meaningful distinction between a *Clewis* factual-sufficiency standard and a *Jackson v. Virginia* legal-sufficiency standard" and that

the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled.[3]

Accordingly, we apply the *Jackson* standard of review to Appellant's sufficiency complaint. In our due-process review of the sufficiency of the

---

[2]Tex. Penal Code Ann. § 46.04(a) (Vernon 2003).

[3]*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[5]

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[6] The trier of fact is the sole judge of the weight and credibility of the evidence.[7] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[8] Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most

---

[4]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[5]*Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[6]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

[7]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

[8]*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

favorable to the verdict."[9]   We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[10] An appellate court must not act as a thirteenth juror.[11]

Appellant's girlfriend, Jessica Nunez, testified that some people came by the house she shared with Appellant and made threatening statements, including telling someone to "shoot him."  Appellant ran from the house in an attempt to get away from the people who were threatening him.  Jessica denied that Appellant had a firearm on his person when he left the house.  A short time after he fled, Appellant called Jessica and asked her to pick him up or have someone else pick him up at the Sonic Drive-in.  Eduardo Gorostita, a friend of Appellant's who saw part of the chase, also testified.  He testified that he knew Appellant and knew that Appellant did not own a gun.  Eduardo also testified that two of the men who were chasing Appellant left Appellant's house in a dark, four-door vehicle, with both men sitting in the front, and a third person chased Appellant on foot.

Paul Nunez, Jessica's brother, testified that he received a phone call and went to Jessica's house.  She asked him to meet Appellant at the Sonic Drive-in. Paul testified that he sat in the passenger seat, his uncle drove, and Paul's grandmother sat in the back seat.  About ten seconds after they turned onto

---

[9]*Hooper,* 214 S.W.3d at 16–17.

[10]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

[11]*See Isassi v. State*, No. PD-1347-09, 2010 WL 3894792, at *3 (Tex. Crim. App. Oct. 6, 2010).

Berry Street, the street that would take them to the Sonic Drive-in, Paul noticed a car following them. When the car in which Paul was riding pulled into the Sonic Drive-in parking lot, he saw Appellant behind some benches. Paul's uncle pulled into one of the parking slots where customers place orders, and Appellant came up to the car and opened the car door. Suddenly the police shined lights on them and told Appellant to get on the ground. Paul testified that as soon as the officers saw Appellant, they put him on the ground, handcuffed him, and then placed him in their unmarked police car.

After Appellant complied with the police's request to get on the ground, the police ordered Paul and his uncle to get out of the car. The officers searched them, put them in handcuffs, and ordered Paul's grandmother to sit on the sidewalk.

Paul testified that Appellant had been waiting for the family to pick him up at the Sonic and that at no time did Appellant throw anything into the bushes or hide anything in the bushes. Paul also testified that Appellant was never close to the bushes at all, which Paul claimed were perhaps ten feet away from Appellant when Paul saw him at the Sonic Drive-in. Paul additionally testified that he had neither seen nor been with Appellant at any time before they saw each other at the Sonic Drive-in. Paul testified that he had no idea what Appellant carried or had on his person that night.

Fort Worth Police Officers Robert Costa and Travis Eddleman, on the other hand, testified that while they were on patrol at approximately 1:00 a.m.,

they happened to see Appellant walking through the parking lot of the Sonic Drive-in, which was closed for the night. Costa testified that he saw Appellant standing by a landscaped courtyard area containing mulch, shrubs, and bushes. When Appellant saw Costa, Appellant leaned down behind one of the bushes and put something on the ground. Costa and Eddleman exited their unmarked car, and Costa instructed Appellant to lie down. While Eddleman stood by Appellant, Costa went over to the bushes and found a .357 revolver. Costa testified that while the landscaped area was "saturated with water," the revolver "was bone dry."

Costa testified that he looked to see if he could see fingerprints but saw none. He picked up the revolver "by its rubber grips," handed it to Eddleman, and then placed Appellant under arrest.

On cross-examination, Costa testified that he had not seen the revolver in Appellant's hand. He also testified that he is not an expert in fingerprints and that he did not request crime scene officers to process the scene.

Eddleman testified that he had special fingerprint training that allowed him to determine whether fingerprints were identifiable by merely looking at them, apparently using no powder or other agent. He testified that because of his special training, he was able to determine that "there were no prints that were identifiable" on the rubber handle of the firearm. He further testified that he did not see Appellant carrying a firearm.

6

The State's theory is that the officers saw Appellant place something behind the bushes at the closed Sonic Drive-in and that when they collected it, they discovered that the object was a firearm. Although there is evidence that Appellant did not possess a firearm, and although the officers testified that they never actually saw Appellant in possession of the firearm, the circumstantial evidence, based on the testimony of the officers, is that Appellant must have possessed the firearm because he placed it behind the bushes.

Applying the appropriate standard of review, we hold that there is sufficient evidence that, if believed, supports the jury's verdict. We, therefore, defer to the jury's resolution of the conflicts in the evidence, overrule Appellant's sole issue, and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 24, 2011